## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-2105

BENJAMIN STONE,
DAYLE MORNINGSTAR, and
LOREE CUTTS,
on their own behalf and on behalf of others similarly situated,

      Plaintiffs,

v.

TRI-STATE CAREFLIGHT, LLC,

      Defendant.

### CLASS ACTION COMPLAINT FOR UNPAID WAGES

Comes now Plaintiffs Benjamin Stone, Dayle Morningstar, and Loree Cutts, on behalf of themselves and all others similarly situated, by and through their counsel of record, who hereby submit their Class Action Complaint for Unpaid Wages, against Defendant Tri-State Careflight LLC (Tri-State).

### STATEMENT OF THE CASE

1. Tri-State owned and operated an aerial medical transportation service operating in Colorado, as well in the states of New Mexico and Arizona.

2. Tri-State employed emergency medical technician (EMT) paramedics ("flight paramedics"), registered nurses ("flight nurses"), and pilots at each of their Colorado flight "base" locations, including in Durango, Montrose, and Eagle.

3. This wage-and-hour litigation arises from Tri-State's former employment of Plaintiffs Benjamin Stone, Dayle Morningstar, and Loree Cutts (collectively "Plaintiffs"), as well

as other similarly-situated flight paramedics and flight nurses.

4. Along with a pilot, the flight nurses and paramedics employed by Tri-State flew in one of Tri-State's helicopters or planes, and provided on-site emergency medical services, treatment, and transportation to critically injured or ill patients who were located in remote locations, or in locations where it was impractical or impossible to use a conventional ground ambulance (*e.g.* mountainous terrain).  They also transported patients from smaller, rural hospitals and clinics to larger hospitals, and assisted with large traffic accidents.  When they were not assisting and/or transporting patients, Plaintiffs and the other flight nurses and paramedics employed by Tri-State completed clinical educational duties, performed administrative work, and did a variety of chores at Tri-State's flight bases.

5. Tri-State's flight nurses and paramedics were paid on an hourly basis.

6. Tri-State's flight nurses and paramedics, including Plaintiffs, regularly worked more than forty (40) hours per week.

7. Tri-State's flight nurses and paramedics, including Plaintiffs, regularly worked more than twelve (12) hours per workday.

8. Work shifts for Tri-State's flight nurses and paramedics, including Plaintiffs, typically lasted twenty-four (24) or forty-eight (48) straight hours.

9. Work performed by Tri-State's flight nurses and paramedics, including Plaintiffs, was subject to the Colorado Minimum Wages of Workers Act (CMWWA).

10. Tri-State's flight nurses and paramedics, including Plaintiffs, were not eligible for overtime exemptions under the CMWWA, as implemented by the Colorado Minimum

Wage Order, 7 C.C.R. 1103-1.

11. Work performed by Tri-State's flight nurses and paramedics, including Plaintiffs, was subject to the provisions of Colorado Wage Claim Act (CWCA), C.R.S. § 8-4-109 *et seq*.

12. Tri-State's flight nurses and paramedics, including Plaintiffs, were not eligible for overtime exemptions under the CWCA, as implemented by the Colorado Minimum Wage Order, 7 C.C.R. 1103-1.

13. Tri-State's flight nurses and paramedics, including Plaintiffs, were not compensated at one-and-one-half-times their regular rate for all hours they worked in excess of forty (40) in a workweek, or over twelve (12) in a workday, or at one-and-one-half times their regular rate for all hours they worked over twelve (12) without regard to the start or end time of the workday, as required by the Colorado Minimum Wage Order, 7 C.C.R. 1103-1.

14. Rather, Tri-State's overtime pay policy was as follows:

> Anything over ninety-six hours (96 hours) [in a two-week pay period] is considered overtime which is paid at 1 1/2 [your regular wage rate]. You will not receive overtime for shift trades, paid personal leave time, and/or any training/clinical shifts that exceed ninety-six hours (96 hours) unless otherwise approved by a supervisor.

(*See* Ex. 1, attached hereto).

15. Under this overtime policy, Defendant paid Plaintiffs and other flight nurses and paramedics their regular hourly rates (i.e., "straight time") for any overtime hours worked under ninety-six (96) in a two-week time period, rather than the legally required one and one-half times their regular rate of pay for those hours.

3

16. By failing to pay Plaintiffs and other flight nurses and paramedics the required minimum overtime wages for their work, Tri-State violated the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.*, as implemented by the Colorado Minimum Wage Order, 7 C.C.R. 1103-1.

17. By failing to pay Plaintiffs and other flight nurses and paramedics the required minimum overtime wages for their work, Tri-State violated the Colorado Wage Claim Act, C.R.S. § 8-4-109 *et seq.*, because that Act requires employers to pay their employees all earned, vested and determinable wages unpaid at the time of separation from employment.

### THE PARTIES

18. Benjamin Stone was employed by Tri-State as a flight paramedic in Colorado, from approximately January 2012 through approximately April 2016.

19. Dayle Morningstar was employed by Tri-State as a flight paramedic in Colorado, from approximately July 2013 to approximately June 2016.

20. Loree Cutts was employed by Tri-State as a flight nurse in Colorado, from approximately December 2014 through approximately March 2016.

21. Defendant Tri-State is an Arizona limited liability company (LLC).

### JURISDICTION AND VENUE

22. Plaintiff Stone is a resident of Colorado and is domiciled in Durango, Colorado.

23. Plaintiff Morningstar is a resident of Colorado and is domiciled in Durango, Colorado.

24. Plaintiff Cutts is a resident of Colorado and is domiciled in Grand Junction, Colorado.

25. Defendant Tri-State is an Arizona LLC with all of its members domiciled in Arizona.

26. Defendant Tri-State was an "employer" within the meaning of the CMWWA and the CWCA.

27. Plaintiffs were Tri-State's "employees" within the meaning of the CMWWA and the CWCA.

28. The amount in controversy exceeds $75,000 and this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

29. Venue is proper pursuant to 28 U.S.C. § 1391(2). The events or omissions giving rise to Plaintiffs' claims occurred in Colorado.

## CLASS ACTION ALLEGATIONS

30. Plaintiffs assert their claims as a Fed. R. Civ. P. 23(b)(3) class action, on their own behalf and on behalf of two classes for which Plaintiffs seek certification.

31. Pending any modifications necessitated by discovery, Plaintiffs assert their Count I Claims under the Colorado Minimum Wages of Workers Act (CMWWA), on behalf of a class preliminarily defined as follows:

    *All flight paramedics and flight nurses who were employed by Defendant in Colorado for a work week over 40 hours and/or a work day over 12 hours at any time between September 1, 2014 and June 1, 2016.*

32. Pending any modifications necessitated by discovery, Plaintiffs assert their Count II Claims under the Colorado Wage Claim Act (CWCA) on behalf of a class preliminarily defined as follows:

    *All flight paramedics and flight nurses formerly employed by Defendant in Colorado for a work week over 40 hours and/or a work day over 12 hours at any time between September 1, 2014 and June 1, 2016, and whose employment by Defendant ended on or after September 1, 2014.*

5

33. The named Plaintiffs worked with the other members of the alleged class, and shared common terms and conditions of employment with them. The named Plaintiffs were subjected to the same unlawful overtime pay policy, and thus suffered the same harms, as did the other members of the proposed class. Specifically, Tri-State uniformly denied the named Plaintiffs and all other members of the proposed class overtime pay for the hours they worked over forty (40) per week, but compensated Plaintiffs and all other flight paramedics and flight nurses solely at "straight time" rates for all hours they worked up to ninety-six (96) per two-week pay period. Defendant also denied overtime pay for the hours Plaintiffs and other members of the class worked in excess of twelve (12) in a single workday, or in excess of twelve (12) consecutive hours without regard to the starting and ending time of the workday. 7 CCR 1103-1(4); 1103(6)(d).

34. On information and belief, the proposed class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the precise size of the potential class because that information is within Tri-State's control. However, Plaintiffs believe and allege that the number of potential class members is in the range of 40 to 50 separate individuals. Membership in the class is readily ascertainable from Tri-State's employment records.

35. Numerous questions of law and fact regarding Tri-State's liability are common to the putative class and predominate over any individual issues which may exist, as all claims are based on an overtime policy that was uniformly applied to all flight nurses and flight paramedics. Common questions of law and fact include, for example:

    a. Whether Tri-State failed to pay Plaintiffs and the putative class one and one-half times their regular rate for any hours worked in a two-

6

       week pay period in excess of forty (40) hours but below ninety-six (96) hours;

   b. Whether Tri-State failed to pay Plaintiffs and the putative class one and one-half times their regular rate for any hours worked over twelve (12) in a given workday or over twelve (12) without regard for the starting or ending time of the workday;

   c. Whether Tri-State's overtime policy was a violation of the CWCA, C.R.S. § 8-4-109 *et seq.* as implemented by the Colorado Minimum Wage Order, 7 C.C.R. 1103-1;

   d. Whether Tri-State's overtime policy was a violation of the CMWWA, C.R.S. § 8-6-101 *et seq.*, as implemented by the Colorado Minimum Wage Order, 7 C.C.R. 1103-1; and

   e. Whether Tri-State's violations of the CWCA and the CMWWA were willful.

36. The claims presented by the putative class representatives are typical of those possessed by all members of the proposed class. This is an uncomplicated case of the failure to properly pay overtime wages. The overtime claims at issue arise from Tri-State's policy, which was applicable to Plaintiffs and all members of the proposed class; each member of the proposed class thus suffered the same overtime pay violations that the named Plaintiffs challenge with their claims. Accordingly, if Defendant's failure to pay overtime was unlawful as to the representative Plaintiffs, it was also unlawful as to all members of the proposed class. Conversely, if Defendant's conduct was lawful, it was

also lawful as to all members of the proposed class.

37. Defendant has acted and refused to act on grounds generally applicable to all members of the proposed class. Specifically, the failure to pay overtime is the result of a general policy that was uniformly applicable to all of Tri-State's flight nurses and flight paramedics in Colorado. As such, Tri-State acted on the same grounds with respect to the entire proposed class.

38. The representative parties will fairly and adequately protect the interests of the proposed class. Because all class members were subject to the same violations of law perpetrated by Tri-State, the interests of absent class members are coincident with, and not antagonistic to, those of the named Plaintiffs. The named representatives will also litigate the absent class members' claims fully.

39. The named representatives are represented by counsel experienced in the class action litigation of wage and overtime claims.

40. As set forth in ¶ 35, *supra*, questions of law and fact common to the proposed class predominate over any questions affecting only individual members, and class treatment is superior to other available methods for fairly and efficiently adjudicating the controversy.

41. Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action. Plaintiffs are unaware of any litigation concerning this controversy which has already been commenced by any member of the putative class.

42. It is desirable to concentrate this litigation in this forum because all claims arose in this judicial district and doing so serves the interests of justice and efficiency.

43. There are not likely to be difficulties in managing the proposed class. The contours of the proposed class will be easily defined by reference to the payroll documents that Defendant was legally required to create and maintain. *See* 7 CCR 1103-1 at 12; 29 C.F.R. § 516.2. Notice will be easily distributed because all members of the proposed class were recently employed by Tri-State and Tri-State was required to create and maintain records containing the mailing addresses of each class member. *See id.*

## COUNT I –VIOLATION OF THE COLORADO MINIMUM WAGES OF WORKERS ACT, C.R.S. 8-6-101, *et seq.*, AS IMPLEMENTED BY THE COLORADO MINIMUM WAGE ORDER, 7 C.C.R. 1103-1

44. Plaintiffs re-allege and incorporate by reference the allegations contained in ¶¶ 1-43, *supra*, as if fully set forth herein.

45. As set forth in ¶ 31 above, all named Plaintiffs assert this claim against Tri-State on behalf of a class of:

> *All flight paramedics and flight nurses who were employed by Defendant in Colorado for a work week over 40 hours and/or a work day over 12 hours at any time between September 1, 2014 and June 1, 2016.*

46. Tri-State was an "employer," as that term is defined by the Colorado Minimum Wage Order ("Wage Order"), because it employed Plaintiffs in the state of Colorado. 7 C.C.R. 1103-1(2).

47. Plaintiffs were Tri-State's "employees," as that term is defined by the Wage Order, because Plaintiffs performed labor or services in Colorado for the benefit of Defendant, and Defendant commanded when, where, and how such labor or services would be performed. 7 C.C.R. 1103-1(2).

48. Since at least 2006, Tri-State was in the "Health and Medical" industry, as that term is

9

defined by Colorado Minimum Wage Order, 7 CCR 1103-1(2)(D).

49. Tri-State employed Plaintiffs in an industry regulated by the Wage Order, 7 CCR 1103-1(2)(D).

50. Tri-State was required to pay Plaintiffs overtime wages (i.e., a time-and-a-half rate) for any hours Plaintiffs worked in excess of forty (40) in each workweek.  *See* 7 CCR 1103-1(4); 1103(6)(d).

51. Defendant failed to pay Plaintiffs overtime wages for any hours they worked in excess of forty (40) in each workweek, paying an overtime premium only for any hours that exceeded ninety-six (96) in a given two-week pay period.

52. Because Tri-State was required to pay overtime wages for any hours worked in excess of forty (40) each workweek, but failed to do so, Defendant was not eligible for the "Medical Transportation Industry" overtime exemption provided at 7 CCR 1103-1(6)(d). *See id.* (emphasis added) ("[E]mployees of the medical transportation industry who are scheduled to work twenty-four (24) hour shifts[] are exempt from the twelve (12) hour overtime requirement *provided they receive overtime wages for hours worked in excess of forty (40) hours per work week.*").

53. Tri-State was required to pay Plaintiffs overtime wages for any hours they worked over twelve (12) in a single workday.  7 CCR 1103-1(4); 1103(6)(d).

54. Tri-State was required to pay Plaintiffs overtime wages for any hours they worked in excess of twelve (12) consecutive hours without regard to the starting and ending time of the workday.  7 CCR 1103-1(4); 1103(6)(d).

55. Tri-State violated the CMWWA as implemented by the Wage Order when it failed to pay Plaintiffs overtime wages for any hours they worked over twelve (12) in each given work day.  7 CCR 1103-1(4).

56. Tri-State violated the CMWWA as implemented by the Wage Order when it failed to pay Plaintiffs overtime wages for any hours they worked in excess of twelve (12) consecutive hours without regard to the starting and ending time of the workday.  7 CCR 1103-1(4).

57. Tri-State's violations of the CMWWA were willful.  As a company operating in Colorado, Defendant was or should have been aware that Plaintiffs were performing work that required payment of overtime compensation.  *See* 7 CCR 1103-1(4); 1103(6)(d).

58. As a result of Tri-State's violations of law, Plaintiffs suffered lost wages and lost use of those wages in an amount to be determined at trial.

59. Plaintiffs are entitled to recover in this civil action the unpaid balance of the full amount of overtime wages they are owed, together with reasonable attorney fees and court costs. C.R.S. § 8-6-118; 7 C.C.R. 1103-1(18).

### COUNT II – VIOLATION OF THE COLORADO WAGE CLAIM ACT (CWCA), C.R.S. § 8-4-109 *et seq*., AS IMPLEMENTED BY THE COLORADO WAGE ORDER (7 CCR 1103-1)

60. Plaintiffs reallege and incorporate by reference the allegations contained in ¶¶ 1-43, *supra*, as if fully set forth herein.

61. As set forth in ¶ 32 *supra*, this Count is asserted by all named Plaintiffs on behalf of a class of:

> *All flight paramedics and flight nurses formerly employed by Defendant in*

> *Colorado for a work week over 40 hours and/or a work day over 12 hours at any time between September 1, 2014 and June 1, 2016; and whose employment by Defendant ended on or after September 1, 2014.*

62. Plaintiffs were Tri-State's "employees" as that term is defined by the Wage Order because they performed labor or services for the benefit of Defendant in which Defendant commanded when, where, and how such labor or services would be performed.  7 C.C.R. 1103-1(2).

63. Tri-State was an "employer" as that term is defined by the Colorado Minimum Wage Order ("Wage Order"), because it employed Plaintiffs and other flight paramedics and nurses in the state of Colorado.  7 C.C.R. 1103-1(2).

64. Tri-State was in the "Health and Medical" industry, as that term is defined by Colorado Minimum Wage Order, 7 CCR 1103-1(2)(D).

65. Tri-State employed Plaintiffs in an industry regulated by the Wage Order, 7 CCR 1103-1(2)(D).

66. Tri-State was required to pay Plaintiffs overtime wages for any hours they worked over forty (40) in each workweek.  7 CCR 1103-1(4); 1103(6)(d).

67. Tri-State was required to pay Plaintiffs overtime wages for any hours they worked over twelve (12) in a single workday.  7 CCR 1103-1(4); 1103(6)(d).

68. Tri-State was required to pay Plaintiffs overtime wages for any hours worked in excess of twelve (12) consecutive hours without regard to the starting and ending time of the workday.  7 CCR 1103-1(4).

69. Because Tri-State was required to pay overtime wages for any hours Plaintiffs worked over forty, but failed to do so, it was not eligible to claim the overtime exemption provided at 7 CCR 1103-1(6)(d).

70. Because Tri-State was required to pay overtime wages for any hours Plaintiffs worked over forty (40), and failed to do so, it violated the CWCA.

71. Defendant failed to pay Plaintiffs required overtime wages pursuant to its overtime policy, which paid overtime premiums only for any hours exceeding ninety-six (96) in a two-week pay period.

72. The overtime wages Defendant denied Plaintiffs constitute earned wages or other compensation owed to the Plaintiffs.  C.R.S. § 8-4-109.

73. Tri-State's violations the CWCA were willful.  As a company operating in the state of Colorado, Defendant was or should have been aware that Plaintiffs were performing work that required payment of overtime compensation.  *See* 7 CCR 1103-1(4); 1103(6)(d).

74. As a result of Tri-State's violations of law, Plaintiffs have suffered lost wages and lost use of those wages in an amount to be determined at trial.

75. Plaintiffs are entitled to recover in a civil action the unpaid balance of the full amount of the wages owed to them, as well as any statutory penalties due, and any reasonable costs or attorneys fees due.  C.R.S. § 8-4-109; C.R.S. § 8-4-110; 7 C.C.R. 1103-1(18).

## COUNT III – UNCOMPENSATED TIME

76. Plaintiffs reallege and incorporate by reference the allegations contained in ¶¶ 1–29, *supra*, as if fully set forth herein.

77. This Count is asserted solely by Plaintiff Cutts.

78. Plaintiff Cutts alleges that she was required to travel significant distances by Tri-State, to complete mandatory orientations or to cover for other flight nurses, but was never compensated for this travel time. Specifically, she alleges that, in approximately January 2015, she was required to travel to Bullhead, Arizona for a mandatory orientation (a total of approximately 1336 round-trip miles); twice, in approximately February 2015, she was required to travel to Tri-State's base in Durango, Colorado (from Tri-State's base in Montrose, Colorado), to cover for another flight nurse (a total of approximately 428 round-trip miles); in approximately March 2015, she was required to travel to Tri-State's base in Durango, Colorado (from Tri-State's base in Montrose, Colorado), for a required training (a total of approximately 214 round-trip miles); and in approximately May 2015, she was required to drive from Durango, Colorado to Tri-State's facility in Bernallilo, New Mexico (a total of approximately 400 round-trip miles). In total, she alleges that she spent 39.5 hours in required travel from and to Tri-State's flight bases and was not compensated for any of this required travel time.

79. Cutts used her own personal vehicle in making these trips and was not reimbursed by Tri-State for her mileage, which totaled approximately 2378 miles.

80. In 2015, the Internal Revenue Service's mileage reimbursement rate was $.575 per mile.

81. The wages Defendant denied Plaintiff Cutts for her mandatory travel time constitute earned minimum wages or other compensation owed to her. C.R.S. § 8-4-109; 7 C.C.R. 1103-1(2) ("all travel time spent at the control or direction of an employer, excluding normal home to work travel, shall be considered as time worked."); 7 C.C.R. 1103-1(3).

82. As a result of Tri-State's violations of law, Plaintiff Cutts has suffered lost wages and lost use of those wages in an amount to be determined at trial.

83. Plaintiff Cutts is entitled to recover in a civil action the unpaid balance of the full amount of the wages owed to her for mandatory travel time, as well as any statutory penalties due, and any reasonable costs or attorneys fees due.  C.R.S. § 8-4-109; C.R.S. § 8-4-110; 7 C.C.R. 1103-1(18).

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray and seek an Order from the Court:

1. Certifying this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of each of the Rule 23 sub-classes;

2. Appointing Plaintiffs as Class Representatives and appointing their counsel as Class Counsel;

3. Awarding recovery of the unpaid balance of the full amount of overtime wages they are owed pursuant to 7 CCR 1103-1.

4. Awarding any penalties due pursuant to Colo. Rev. Stat. § 8-4-109(c).

5. Awarding reasonable attorney fees and court costs pursuant to C.R.S. §§ 8-4-110; 8-6-118; and 7 C.C.R. 1103-1(18).

6. Awarding such other and further relief as may be necessary and appropriate.

DATED: September 1, 2017

Respectfully submitted,

| | |
|---|---|
| THE KELMAN BUESCHER FIRM | LUBIN & ENOCH, PC |
| */s/ Ashley K. Boothby* | Nicholas J. Enoch |
| Ashley K. Boothby | |
| Andrew H. Turner | |
| 600 Grant St., Ste. 450 | 999 18th Street, Suite 3000 |
| Denver, CO 80203 | Denver, CO 80202 |
| Phone: (303) 333-7751 | Phone: (303) 595-0008 |
| Fax: (303) 333-7758 | Fax: (602) 626-3586 |
| aboothby@laborlawdenver.com | nick@lubinandenoch.com |
| aturner@laborlawdenver.com | |

*Attorneys for Plaintiffs*